This morning is 15-1373 Digital Satellite Connections v. Dish Network. Mr. Overhauser. Thank you. May it please the Court. My name is Paul Overhauser, and I represent the appellants Kathy King and Digital Satellite Connections, or DSC. I think this is an unusual case. What makes it unusual is that the response brief of Dish essentially concedes, or at least does not dispute, the main argument in appellant's opening brief. That main argument is that the critical evidence that the district court relied on in its summary judgment ruling was improper summary judgment evidence. That evidence was from the statement of Dish's Bruce Werner, and he alleged in his statement that during 2012, three former Dish employees contacted Ms. King and demanded transfer of the domain name Dishnet.com. I want to stop you, and I'm sorry to interrupt you so early, but I don't know that I agree with your premise, which is that they just simply concede your argument. My understanding of what's happened here is you're suggesting that this 2012 demand was inappropriately relied on by the district court, and they're suggesting, based on some pretty specific language in the district court's order, that the district court didn't even end up considering the 2012 demand. Instead, the court relied on the 2013 demand. And so, no, they didn't address the 2012 demand because it's really not relevant, because the district court talked about it but then relied instead on 2013. So I read their brief to then talk about the few issues that you raised, sort of interspersed in your brief. You also challenged the reliance on the 2013 demand, and so I read their response to be to that argument, which is the only seemingly relevant argument if you agree that the district court relied on the 2013 demand. They make that argument about what I call the January 2013 email. The point I was trying to make is that there – and I'll discuss that momentarily – but that argument does not deny the fact that Mr. Warner's declaration was improper summary judgment evidence. The problem with Dish's argument that it made in its summary judgment brief is that it never designated the January 2013 email as summary judgment evidence. This is a theory that Dish did not even come up with until after the summary judgment ruling. But you conceded it in your response brief. But the point is that the summary judgment ruling did not rely on that 2013 email. Well, my regulation is that the district court said that it's undisputed that I, the district judge, do not have to get into whether or not there was a proper demand in 2012, because the parties agree, based on the explicit statement in your response brief, that there was a written demand in 2013. And so, not only is there a question about forfeiture, in my mind, but there's a question about labor. Because you're asking us to overturn the district court's finding, the district court's judgment, based on reliance on what you said specifically to the district court that there was a written demand in 2013. There was a written demand in 2013. But that demand was not before the court in the summary judgment part of the case. Well, that's not the argument you made below, I don't think, because in your motion for reconsideration, and I don't think this was pointed out in the briefs, but you specifically say in asking the court to reconsider its decision, there's a paragraph in there talking about the 2012 demand. And at the end of it, you say, in finding that Ms. King breached, in finding that Ms. King breached, the court appears to have relied exclusively on dishes noticed to Ms. King issued after this suit was filed in 2013. You recognized in the lower court that the lower court had relied exclusively on the 2013 demand. And now you're here telling us that you want us to think or act as though the district court relied exclusively, or at least mostly, on the 2012 demand, which you've conceded did not occur. And I don't think you even made this argument in the district court that you're making now. I'm not sure you even made it to your supply brief in this case. The January 2013 email was not even proffered to the district court. When did you make that argument? And did you make that argument to the district court when you conceded that the district court relied on that email in your rehearing motion? Did you say you can't rely on that email because it wasn't even presented to you? I don't recall precisely what the brief said. I don't think you did. But the point is, is that a summary judgment motion, summary judgment ruling, is to be based on the evidence that is designated by the parties. And DISH never designated the January 2013 email. We never had an opportunity to argue the relevance of that purported, what DISH claims is a purported demand, during the summary judgment briefing. Well, let me test that. On page four of your response brief, on the heading, and this is from your brief, DISH's claim that it, quote, demanded transfer of DISHnet.com before 2013 is unsubstantiated. And then you proceed, we'll occupy your time by reading the whole paragraph, that you then address the Warner Declaration. And then your last sentence in this section with regard to the demand before 2013 is, to be clear, Kathy King does not deny that after the suit was filed in 2013, DISH made a written demand. Again, under the heading of that DISH failed to, had not substantiated, that it had requested transfer of DISHnet.com before 2013. So maybe, you know, in an academic theoretical sense, maybe you're right. DISH didn't present that argument. But you did. You told the district court that, to be clear, you don't deny that after a suit was filed in 2013 that Kathy King made a written demand. And the whole context of the paragraph was about transfer of DISHnet.com. But we did not concede that that demand was for transfer of DISHnet.com. That's the whole, that was what you put in bold in the heading. DISHnet, DISH's claim that it, quote, demanded transfer of DISHnet.com before 2013 is unsubstantiated. What else did you think you were, well, let me just ask you now. What, if you weren't talking about transfer of DISHnet.com, what were you talking about? There was, we were acknowledging the existence of the 2013 email, even though it was not before the court. By the time that email had been issued, the retailer agreement had expired. DISH no longer had any right to demand a transfer of anything. Except for the last sentence of paragraph 6 of the TLA that's incorporated into the retailer agreement, right? Well, that agreement states that obligations survive termination of the agreement. But Ms. King, at the end of the expiration of the agreement, did not have any obligation to transfer DISHnet.com or the DISHnet trademark, because prior to that time, DISHnet, I'm sorry, DISH had not made a demand. Moreover, whether or not you're talking about a purported verbal demand made in 2012, which was not summary judgment evidence, or this January 2013 email, which was made after the agreement expired, after Ms. King transferred her DISHnet rights to DSC, and after this lawsuit was filed, that request still did not comply with the agreement, because it was not sent to Ms. King's address on the first page of the agreement. It was sent by email. It wasn't even sent to Ms. King. It was sent to her attorney. I would also point out — Well, the district court, going back to your list of reasons there, one of them is the expiration of the agreement. But as I read the district court's order, the district court explicitly said that you're right, that the right of the defendant to enforce the terms of the trademark license agreement survived expiration of the retailer and trademark license agreements. And that was a — and then she points out that under Section 7, the licensee's obligation survived the expiration of termination. But she's referring to the trademark license agreement, which apparently is incorporated within the retailer agreement. And I didn't see that you challenged that finding anywhere, that there was a separate provision that was broader, what she was saying under the trademark license agreement, that survived the expiration of the agreement. And you don't seem to challenge that. So I don't understand why now you're arguing the expiration of the retailer agreement was material. It was — again, it was just material because once it expires, DISH no longer has the right or the ability to impose — But that's not true under the trademark license agreement. At least that's what the district court found. And you don't challenge that. And the trademark license agreement was part of the retailer agreement. I don't — I don't challenge that they were part of this — the trademark license agreement and the retailer agreement are a part of the same thing. But notwithstanding that, again, the notice requires — was required to be sent to Ms. King. I'd also point out that even if you look at the provisions of the trademark license agreement, the obligations to transfer do not apply to preexisting trademarks. If you carefully read it — Well, that's just apparently not true, is it? I mean, because the first sentence of paragraph six is the licensee, DSC and Ms. King, represents and warrants that licensee and its affiliates, if any, have not previously reserved, filed, or registered. And licensee here agrees that licensee shall not and shall ensure that its affiliates, if any, do not in the future reserve, file, or register any mark or formative mark that contains or incorporates in whole or in part any word, phrase — I mean, it's a long sentence. Yes. But you get the idea. The very first very long sentence of paragraph six is a specific warranty that Ms. King has not previously registered any part of the mark, dish, or dishnet. And if we conclude that part of dishnet.com, or dishnet, is the word dish, which was part of the mark, then you did warrant that you have not previously registered the mark. Correct? Or a trademark, as defined in the TLA. As of the time that the retail agreement in TLA went into effect, dishnet was not a trademark of Dish. It was a trademark of Kathy King. And she had not registered it. Well, they had a trademark in Dish and Dishnet, right? Who did? Who's they? Your adversary. Well, 15 or, I guess, 18 months after the agreement went into effect. But the trademark license agreements defines trademarks as what exists as of the date the agreement began. And as of the date the agreement began, Dish did not own a trademark in the term dishnet. Kathy King did. Kathy King was the one that created the dishnet trademark rights over her course of the prior 12 years by using that trademark, by building her customer base to 11,000, by obtaining customers in all 50 states. Let me ask it this way. If we conclude that your adversary owned a trademark in 2010 when you signed the retailer agreement, that they owned a trademark in Dish or Dishnet, do you agree that the opening sentence of paragraph 6 constituted a warranty that Kathy King had not previously registered any mark that contained any part of the trademarked name or any confusingly similar name? I don't know if it was a representation or warranty, but the point is that Ms. King had not registered and not obtained any registration for Dishnet. She just had common law rights. She also was not the one that registered the Dishnet.com domain name. That was done by her predecessor in interest, Don King, who had passed away. Well, that's why the agreement talks about and its affiliates. Her brother had been an affiliate, right? That was the entity that she acquired. I don't know if her deceased brother would be considered an affiliate under the agreement. She took over the business after he died and was the successor to the assets that it used, including the Dishnet trademark and the Dishnet.com domain name. But the bottom line, and one of the important points to remember, is that not only was, as a preexisting trademark, Dish was owned by Kathy King, but she was the one that developed the goodwill and the mark. Thank you. I'll reserve the balance of my time. Thank you, counsel. I'm going to please the Court's Steward, Rafael, for the Dish Network parties. And with me at counsel table is Susan Smith, who represented Dish Networks in the District Court. The District Court correctly ruled the Dish Networks 2010 agreement obligated the plaintiffs to transfer both the Dishnet domain name and the accompanying marks that they were trying to operate under to Dish Networks and to stop interfering with Dish Networks' efforts in the trademark office. I'd like to focus on three points this morning. The first is that on appeal, the plaintiffs, of course, are limited to their opening brief. And in their opening brief, in terms of the arguments they raised, they have not disputed that if there was a request to transfer the domain name and the marks, then Ms. King was obligated to transfer them. The dispute that they try to raise on appeal is with regard to the Werner affidavit. And as the Court pointed out, the District Court didn't rely solely on the 2012 verbal request. It relied on the plaintiff's admission in their opposition to the summary judgment motion that a request had been made. And then the third point I'll focus on is that Ms. King can't shield this intellectual property by transferring it to a shell company that she is the owner and member of. So let me start with the issue of the plaintiff's concession. They conceded at page 153 and 154 of Volume I of the appendix that the obligation to assign only arose upon a request, and they go on to refer to the written demand being made on January 31, 2013. Their focus on the Werner Declaration is really beside the point because, as Judge Bachrach pointed out, the obligation to transfer survives the termination of the agreement, and the plaintiffs haven't challenged that ruling of the District Court on appeal. So that is the law of the case. I don't think they can now change arguments and try to challenge the survival issue. So given that, a request to transfer could be made even today, and under the plain language of the agreement it would have to be honored. So the question then is when was a request to transfer made? And I think that there are really three things that the Court could hang its hat on in order to demonstrate that a request was made. The first thing is the counterclaim. Paragraph G of the counterclaim, which we reference in our appellee's brief at page 14 and 15, specifically says and asks for specific relief in the form of a transfer of all domain names to DISH Network that incorporated formatives of the DISH Network marks, including DISHnet.com. So at the very latest, when the counterclaim was filed in April of 2013, they obviously knew that a request had been made. But you haven't argued that to us until just now. That's exactly right. It's not argued in our brief, but as the Court well knows, you can affirm for any reason that's plainly in the record as long as there's been a fair opportunity to address it. Well, you know, that's also tempered by the fact that we observed that under Rule 56, typically a plaintiff wouldn't be on notice of an obligation under Celotex to present evidence that's not been presented until oral argument on an appeal. On something like this, though, the question is did they know that DISH Networks was asking for this intellectual property to be turned back to them? And they cannot credibly say, gee, we didn't know that once the counterclaim was filed. That's my point. Well, that's true. But let me ask you this. Until you just made that utterance or until there was some indication about Paragraph G of the counterclaim, you didn't, in your summary judgment brief, rely on the 2013 request, did you? Yes and no is the answer. In the opening brief, as you've seen, there have been like four opinions that filled out the summary judgment ruling. In the opening motion, DISH Network filed for summary judgment and said, here's the Warner affidavit. We asked for it in 2012. They disputed the Warner affidavit. She denied that a request had been made. But she admitted in her summary judgment opposition that a request was made in 2013. And that's what the district court relied on. Now, in that initial summary judgment ruling, it only addressed the first three elements of the Buccia contract claim. It left off the question of damages and specific performance. In the briefing on that motion, the January 13th – the January 31, 2013 email was filed. And so it was of record on summary judgment at the time the court issued its specific performance summary judgment ruling. So it was properly – Well, when she admitted – you say she admitted that there was a 2013 demand made. I think you're referring to that language that Judge Bachrach read earlier. To be clear, Kathy King does not deny that after the suit was filed in 2013, DISH made a written demand. And you infer – and I understand how you infer that that was referring to the earlier sentence about the transfer – the demand that she transferred the DISHnet.com domain name. But does that necessarily – does that concession for summary judgment purposes that there was a 2013 demand, does that concede that that demand was adequate, which seems to be a big part of their complaint now? There are aspects of that demand that weren't adequate. And I didn't see any admission at all in that way in their responsive briefing. Well, I think it is dispositive because their argument in the district court was that the demand had to be made in 2012 while the agreement was in effect. That was their argument. And they said, yeah, yeah, demand was made in 2013, but that was too late. So given that they were wrong on that legal point, as Judge Bachrach pointed out, the obligation survived. The concession that the demand was made in 2013 is dispositive. So I think the answer is yes, it is dispositive for that reason. So they were actively arguing the sufficiency of the 2013 demand. They conceded the demand was made, and we can infer what the demand was about. But you would say that they actively argued the sufficiency of that demand in terms of the summary judgment? So there are two things here. There's the initial admission in the summary judgment opposition that the demand was made. And then there's the actual demand itself, the January 31, 2013 email. That was filed in connection with the second round of summary judgment briefing. And the way it came up was they were arguing in the district court that there had been a waiver of Dishnet's right to assert the demand for the intellectual property. And in support of, in opposition to that, Dishnet filed the January 2013 email to say there was no waiver, but you could not mistake that there was no waiver once you got this 2013 email. And when you look at the email, which is in the record twice, what it does is it copies verbatim the language of Paragraphs 6 and 7, and it says we demand this, we demand this, we request that you transfer this. And that request was specifically acknowledged by Mr. Oberhauser. There's an email in the record where he responds to it and says, I don't agree with you, but I have it, essentially. So there's a request, there's receipt, there's actual knowledge, at least by then, that the request had been made. And once you place that demand into the record, there was an opportunity to respond to the sufficiency of that demand, as well as to the 2012. That's right. And I will point out that in connection with the original summary judgment papers, which I believe this was filed August 25, 2014, you'll find this at page 175, Volume 1 of the appendix. The interrogatory answer of DishNet's works was put into the record, and that specifically states plaintiffs willfully breached Section 7 of the 2010 TLA by refusing to immediately transfer the DishNet.com domain name and DishNet trademarks upon John Kennedy's request in his January 31, 2013 email. So that was a record on the first summary judgment ruling. The email was then put into the record by the defendants, and then it was put into the record again by the plaintiffs. So the version of it put in by the defendants was filed on November 20, 2014. That's at page 116 of Volume 2 of the supplemental appendix. The plaintiffs filed it on August 21, 2016. That's at page 113 of Volume 2 of the appendix. So the district court properly ruled that a request had been made, having conceded, essentially, and having waived on appeal that if a request was made, they have to transfer it. It's unquestionable that a request was made, and that triggered the obligation. And as of those times, it's also undisputed that Kathy King was the sole owner and the sole member of the LLC. So the district court issued its first ruling on specific performance against Ms. King. It didn't reach the LLC, but it was against Ms. King. That should have been enough to compel her to transfer the trademark, but she took the position, well, I've given it to the LLC, and, you know, it's not mine anymore. The order that the district court entered required that Ms. King or anyone acting in concert with her turn over the domain name and the marks. She, in our view, disobeyed that. The contempt issue was pending in the district court. And it was only after that order issued that she then got somebody else to be on the board of directors of the LLC, but she apparently is still a member of the LLC. So that gets us to the issue of whether specific performance can be entered against the LLC, and we think that it plainly can. She can't avoid her obligations to transfer this intellectual property by just giving the property over to a shell company. As Judge Becker pointed out, the agreement required her and her affiliates to transfer property that didn't belong to her. And the issue, we think, is whether the LLC was a bona fide purchaser for value, a BFP, and it plainly was because it's plainly King's affiliate. Now, Ms. King admitted in her deposition in April 2014 that she'd always been the sole owner of the LLC. That's at page 135 of Volume 2 of the Supplemental Appendix. She admitted that the LLC had paid nothing for the assignment. She admitted in her brief below that the LLC was not a purchaser. I think her argument is you can only apply the BFP doctrine if there's a purchaser involved, and since the LLC didn't purchase it, it doesn't apply. But the BFP doctrine is very broad. So if I give my watch to Clerk A and I say, Would you hold my watch for me? And he says, Sure. And then he gives it to Clerk B, and I go to pick it up. Clerk B says, I didn't agree to hold it for you. I'm keeping it. He obviously is not a – the only way he could have my watch is if he's a bona fide purchaser for value. But he wouldn't – it wouldn't be because he didn't purchase it. It wasn't for value, and it wasn't bona fide. And that's exactly what we have here. Now, we cited in the district court relied on the Chandler trailer case, which I think is really on all fours here. And that was the case out of the Colorado Court of Appeals, where a defendant breached an agreement to sell a PUC certificate with regard to the – you needed a certificate of public utility and convenience – public use and convenience from the state commission. The defendant found a better offer and sold it to another buyer. And the plaintiff said – tried to get the PUC certificate from the other buyer, and the other buyer said no. And the trial court said, you know, can't help you because this requires a transfer by the commission and somebody else has it. And the Court of Appeals of Colorado said no, no, no. If that buyer was not a bona fide purchaser of value, then specific performance can be entered. And that's the rule that the district court applied here correctly. Can I ask you a question about that? Yes. Now, is the obligation of the Chandler principle, is that contingent on Ms. King having an obligation? I mean, your adversary says, well, that paragraph 6 survives termination of the TLA or the retailer agreement only if she had an obligation to return the domain name and the trademark to DISH, your client. And before January – a month before the January 31st demand from counsel, she had already transferred on December 31st the trademark and the domain name, and so she no longer had it. And so DSC on January 31st had done nothing wrong. And so, you know, whether they were a bona fide purchaser or not, Kathy King had done nothing wrong and DSC had done nothing wrong. If your opposing counsel is right that you can only unwind that transfer if there had been an obligation to return the domain name and trademark. Yes. I don't think that's right because the contract specifically says that it binds Kathy King and her affiliates and DSC LLC is plainly her affiliate. She owns it and she's the sole shareholder and the manager. You still wouldn't have all the elements of a bona fide purchaser for value because they didn't purchase it. It wasn't for value. And I think your hypothetical – your question goes to the notice question, you know, if they bought it when the demand had met. But even if you were right about that, they still don't need the other elements of the bona fide purchaser for value. It would be like the watch example, right? I get my watch back even though the Clerk A has given it to Clerk B, and that's exactly what we have here. And this is the common law rule. We cited the – a good case for that is the Harris Trust decision from the U.S. Supreme Court. And the third restatement of restitution and unjust enrichment, Section 58-2, has a very good black letter law statement of this principle. The – I want to address something in the reply brief. The reply brief argues that the contract is ambiguous and has to be construed against the drafter. That argument wasn't raised in the opening brief, but it's also negated by Paragraph 17.3 of the contract at page 135-03 of the appendix that says that construction against the draftsman's presumption does not apply to this contract, and this came to agree to that. I think that there's a common theme that runs through the two groups of issues on appeal, and that's the theme of unjustified excuse. Ms. King says, sure, I had to transfer the domain name and the trademarks if you'd only asked, but I didn't hear you when you asked in 2012. And she says, I'd like to be able to give this property back to you. Well, don't say she didn't hear on 2012. She has a – she controverts it directly. She says, I did not receive it. That's correct. And she also wants to say, I'd like to give the property back to you, but I gave it to my holy aunt Ella so you can't do it. Those are plainly unjustified excuses, and the district court properly looked through them, and for those reasons the court should affirm. On the motion to seal, isn't it correct that the 2010 agreement's been publicly revealed in other cases, in other courts? That's correct, Your Honor. We would – in light of that, we would not assert confidentiality as to that agreement. I think the one document that is important, particularly important to us, is the P&G contract, which is referenced in the papers there. That has a non-disclosure obligation on our part, and it involves sensitive information about what was paid for a particular intellectual property. So of the items in issue, that's the most important to us. Thank you. Thank you. Can I – Certainly. When you said 17.3, what were you talking about? 17 – of what agreement? So I was referring to the retailer agreement. Okay. This is on the – the don't construe against the – construing ambiguity against the draftsman. Okay. Yeah. Thank you. Counsel, your time has expired. Thank you, Your Honor. The case shall be submitted. I appreciate the arguments this morning, and counsel are excused.